## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, 10 S. Howard Street, 3rd Floor Baltimore, MD 21201, | ) ) ) ) ) | Civil Action No. |
| Plaintiff, | ) ) | COMPLAINT |
| v. | ) ) | JURY TRIAL DEMAND |
| FIRST TITLE & ESCROW, INC., STREAMLINE TITLE & ESCROW SERVICES, LLC, ABSTRACTS USA, LLC, PAPERMASTER LAW, LLC, 30 West Gude Drive, #400 Rockville, MD 20850 | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act ("the ADA") of 1990, as amended through the ADA Amendments of 2008, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices and to provide appropriate relief to Tamara Littlejohn ("Littlejohn") who was adversely affected by such practices. As alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("the EEOC" or the "Commission") alleges that Defendants First Title & Escrow, Inc.; Streamline Title & Escrow Services, LLC; Abstracts USA, LLC; and Papermaster Law, LLC (collectively "Defendants") unlawfully discriminated against Littlejohn in violation of the ADA when they revoked her reasonable accommodation of a part-time schedule,

insisting that she work full-time, and discharged her because of her need for reasonable accommodation and/or because of her disability (End Stage Renal Disease).  The EEOC further alleges that Defendants have co-mingled personnel and medical records.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981A.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

## PARTIES

3.      Plaintiff, the United States Equal Employment Opportunity Commission, is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1)  and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4.      At all relevant times, Defendant First Title & Escrow, Inc. has continuously been a Maryland corporation with its principal office in Rockville, Maryland, doing business and operating in approximately 39 states, including the State of Maryland.  At all relevant times, Defendant First Title & Escrow, Inc. has had at least fifteen (15) employees.

5.     At all relevant times, Defendant First Title & Escrow, Inc. has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

6.     At all relevant times, Defendant First Title & Escrow, Inc. has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7.     Defendant First Title & Escrow, Inc. provides settlement services through its wholly owned subsidiaries Defendant Streamline & Escrow Services, LLC; Defendant Abstract USA, LLC; and Defendant Papermaster, LLC.

8.     At all relevant times, Defendant Streamline Title & Escrow Services, LLC has continuously been a Maryland limited liability corporation with its principal office in Rockville, Maryland, doing business and operating in approximately 39 states, including the State of Maryland.

9.     At all relevant times, Defendant Streamline & Escrow Services, LLC has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

10.     At all relevant times, Defendant Streamline & Escrow Services, LLC has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

11.     At all relevant times, Defendant Abstract USA, LLC has continuously been a Maryland limited liability corporation with its principal office in Rockville, Maryland, doing business and operating in approximately 39 states, including the State of Maryland.

12.     At all relevant times, Defendant Abstract USA, LLC has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

13.     At all relevant times, Defendant Abstract USA, LLC has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

14.     At all relevant times, Defendant Papermaster, LLC, has continuously been a Maryland limited liability corporation with its principal office in Rockville, Maryland, doing business and operating in approximately 39 states, including the State of Maryland.

15.     At all relevant times, Defendant Papermaster, LLC has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

16.     At all relevant times, Defendant Papermaster, LLC has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

17.     At all relevant times, Defendants First Title & Escrow, Inc.; Streamline Title & Escrow Services, LLC; Abstracts USA, LLC; and Papermaster Law, LLC have operated as a single employer and in this regard have maintained interrelated operations: common management; centralized control of labor relations and personnel; and common ownership and financial control.

a.     Stephen Papermaster is the owner of Defendants First Title & Escrow, Inc.; Streamline Title & Escrow Services, LLC; Abstracts USA, LLC; and Papermaster Law, LLC.

b.      Stephen Papermaster is the resident agent for Defendants First Title & Escrow, Inc.; Streamline Title & Escrow Services, LLC; Abstracts USA, LLC; and Papermaster Law, LLC.

c.      Littlejohn performed work for Defendant First Title & Escrow, Inc. and Defendant Streamline Title & Escrow Services, LLC.

d.      Defendants First Title & Escrow, Inc.; Streamline Title & Escrow Services, LLC; Abstracts USA, LLC; and Papermaster Law, LLC utilized the same employee  manual which specifically states that the policies contained therein apply to all of Defendants' employees:

> The information contained in this Manual applies to all employees of First Title & Escrow, Inc. and any related companies, including Streamline Title & Escrow Services, LLC, Abstracts USA, LLC or Papermaster Law LLC.  Wherever "First Title & Escrow, Inc." is referenced in this manual, the same rights and obligations shall apply to employees of other entities listed above as well.

e.      Documents maintained in Defendants' personnel files contain the letter head of Defendant First Title & Escrow, Inc. and Defendant Streamline Title & Escrow Services, LLC.

f.      Pam Gibbons is the Vice President of Defendant First Title & Escrow, Inc. and the Director of Operations for Streamline Title & Escrow Services, LLC.

g.      Alana Steele served as the Human Resources Manager for Defendants First Title & Escrow, Inc.; Streamline Title & Escrow Services, LLC; Abstracts USA, LLC; and Papermaster Law, LLC.

h.      Defendants First Title & Escrow, Inc.; Streamline Title & Escrow Services, LLC; Abstracts USA, LLC; and Papermaster Law, LLC have the same business address.

## STATEMENT OF CLAIMS

18.     More than thirty days prior to the institution of this lawsuit, Littlejohn filed a charge with the Commission alleging violations of Title I of the ADA by Defendant First Title & Escrow, Inc. which is part of the integrated enterprise with Defendants Streamline Title & Escrow Services, LLC; Abstracts USA, LLC; and Papermaster Law, LLC.  All conditions precedent to the institution of this lawsuit have been fulfilled.

19.     At all relevant times, Littlejohn was a qualified individual with a disability, as defined by the ADA, 42 U.S.C. § 12102(1)(A) and 42 U.S.C. § 12111(8).

20.     Littlejohn was diagnosed with End Stage Renal Disease ("ESRD") in or around January 2010.  ESRD involves the failure of the normal operation of kidney function such that the individual requires dialysis and/or a kidney transplant.  Littlejohn began dialysis in or around January 2010. Because of her ESRD, Littlejohn is unable to produce urine.

21.     From January 2010 through the present, Littlejohn's ESRD substantially limits her in one or more of her major bodily functions, including but not limited to her urinary or renal system, and the bodily functions of the processing, regulating, and filtering of fluids, the removal of toxins, and the creation of hormones.

22.     Littlejohn's ESRD, as described in Paragraphs 20 and 21 above, constitutes an actual disability under the ADA.

23.     Since at least November 2010, Defendants have engaged in unlawful employment practices in its Rockville, Maryland office in violation of Sections 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a), (b)(5)(A).  These practices include denying Littlejohn reasonable

accommodation and terminating her employment because of her need for reasonable accommodation and/or on the basis of her disability.

      a.      Littlejohn previously worked for Defendants as a Title Examiner from August 2003 through January 2005 and again from March 2009 until December 24, 2009 when she was hospitalized and diagnosed with ERSD.  Littlejohn informed Vice President Pamela Gibbons of her diagnosis and need for dialysis.  Gibbons told Littlejohn to contact her once she had become accustomed to dialysis and could return to work.

      b.      In June 2010, Littlejohn talked with Gibbons and requested that she be permitted to return to work on a part-time schedule so that she could continue with her dialysis.  Gibbons agreed to such an arrangement.

      c.      In or around June 2010, Littlejohn began performing work on a part-time basis for Defendants.

      d.      On October 20, 2010, Littlejohn officially became an employee of Defendant First Title & Escrow Services, Inc., reporting to Processing Lead Jillian Michel and working a part-time schedule.

      e.      On December 14, 2010, Defendants' Human Resources Director Alana Steele informed Littlejohn that she needed to work eight hours a day going forward.  Littlejohn explained that due to her dialysis schedule, working eight hours a day was not possible.  When she requested that Steele speak with Gibbons about the arrangement that had been made upon her hire, Steele indicated that it was Gibbons who wanted Littlejohn to work eight hours a day.

      f.      Based on her conversation with Steele, Littlejohn approached her social worker at Davita Dialysis Center and asked if there were any options that would enable her to work eight hours a day. Her social worker told her that the only other option was to perform dialysis at home, but such an option

required surgery to insert another port, a two week healing period, and a three day period to train to become independent with the process.   Littlejohn ultimately decided to opt for the surgery and informed Gibbons of the pending surgery, healing process and home dialysis training process.

g.   On January 18, 2011, Littlejohn underwent the surgery to insert another port for home dialysis and was absent for the remainder of the week.  Although still in the healing process, Littlejohn returned to work on January 24, 2011 working a part-time schedule.

h.   On February 10, 2011, Littlejohn emailed Defendants stating that she had "made the decision to change the type of dialysis so that [she] could not only work [her] full time hours but so that [she] would have a better quality of life and flexibility."   In this same email, Littlejohn requested Defendants' "patience" while she makes "the adjustments," noting that she would be late the next morning since her home dialysis supplies would be delivered between the hours of 7:00 a.m. and 9:00 a.m. and that she would need to undergo training for the following week.

i.   On February 15, 2011, Defendants required that Littlejohn sign a "Written Acknowledgement" which stated that beginning February 21, 2011 she would work a full-time schedule.

j.   On February 21, 2011, Littlejohn notified Michel that she had started her home dialysis on Friday, but needed to see her doctor at 10:00 a.m. that day to ensure that everything was fine. Littlejohn stated that she would log on from home from 8:30 to 9:30 a.m. and be in the office after her appointment.  Michel informed Steele and Gibbons that she had approved such an arrangement.

k.   On February 28, 2011, Littlejohn informed Defendants that she needed to leave at 4:00 p.m. in order to go to the dialysis center to get a shot of heparin since her dialysis line had clogged up.

l.   On March 1, 2011, Defendants demoted Michelle Bryce from Processing Coordinator to Littlejohn's position of Title Examiner.

m.     On March 2, 2011, Littlejohn called out sick, using her Paid Time Off.

n.     On March 3, 2011, Littlejohn returned to work and noticed that Bryce was working on the same files to which she was assigned.  After Littlejohn inquired why Bryce was working on the same files, Steele called her into her office and after asking how her dialysis was going, handed Littlejohn a Termination Notice notifying her that she was being laid off "due to lack of work.  There is not enough in the pipeline to sustain the current position."  When Littlejohn disputed that there was a lack of work, Steele told her that she felt that Bryce could do the job and that Littlejohn needed to be home taking care of herself.

24.     Since at least February 2011, Defendants have also violated 42 U.S.C. § 12112(d) by failing to keep separate personnel and medical records.

25.     The effect of the practices complained of above in Paragraph 23 has been to deprive Littlejohn, who was at all times qualified, of equal employment opportunities and otherwise adversely affect her rights under the ADA based on her disability and/or the need to reasonably accommodate her disability, resulting in expenses incurred due to lost wages, emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life.

26.     The unlawful employment practices complained of above in Paragraph 23 were intentional.

27.     The unlawful employment practices complained of above in Paragraph 23 were done with malice or with reckless indifference to the federally protected rights of Littlejohn.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of disability;

B.      Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities and eradicate the effects of its past and present unlawful employment practices, and prevent such discrimination from occurring in the future;

C.      Order Defendants to make whole Littlejohn by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to reinstatement or front pay in lieu of reinstatement;

D.      Order Defendants to make whole Littlejohn by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraph 23 above.

E.      Order Defendants to make whole Littlejohn by providing compensation for past and future non-pecuniary losses including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, frustration, and humiliation, in an amount to be proven at trial;

F.      Order Defendants to pay Littlejohn punitive damages for their callous indifference to her federally protected right to be free from discrimination based on disability in the workplace;

G.      Order Defendants to sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and inform all employees that they will not discriminate against any employee or applicant because of a disability, including that they will comply with all aspects of the ADA;

H.      Order Defendants to maintain separate personnel and medical records in accordance with 42 U.S.C. § 12112(d);

I.      Grant such further relief as the Court deems necessary and proper in the public interest; and

J.      Award the Commission its costs in this action.

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

DEBRA M. LAWRENCE
Regional Attorney

MARIA SALACUSE
Supervisory Trial Attorney
Bar No. 15562
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

11

10 S. Howard Street, 3rd Floor
Baltimore, Maryland  21201
(410) 209-2733 (phone)